# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

JENNIFER ROTH, *on behalf of herself and others similarly situated*,

        Plaintiff,

v.

LIFE TIME FITNESS, INC.,
LTF CLUB OPERATIONS COMPANY, INC.,
LTF MANAGEMENT COMPANY, LLC, and
LTF YOGA COMPANY, LLC,

        Defendants.

Civil No. 16-2476 (JRT/HB)

**MEMORANDUM OPINION AND ORDER**

Daniel R. Karon, **KARON LLC**, 700 West St. Clair Avenue, Suite 200, Cleveland, OH 44113, and Garrett D. Blanchfield, Jr., **REINHARDTS WENDORF & BLANCHFIELD**, E-1250 First National Bank Building, 332 Minnesota Street, St. Paul, MN 55101, for plaintiff.

L. Dale Owens, **JACKSON LEWIS LLP**, 1155 Peachtree Street Northeast, Suite 1000, Atlanta, GA 30309, and Elizabeth S. Gerling, **JACKSON LEWIS P.C.**, 150 South Fifth Street, Suite 3500, Minneapolis, MN 55402, for defendants.

Plaintiff Jennifer Roth brings individual and class unjust enrichment claims against Life Time Fitness, Inc., LTF Club Operations Company, Inc., LTF Club Management Company, LLC, and LTF Yoga Company, LLC, (collectively, "Life Time"). Roth seeks to represent a class of Life Time spinning, aerobics, and yoga instructors seeking relief from Life Time for time spent preparing for and cleaning up after fitness classes.

Roth refiled this action after the Court dismissed her claims without prejudice, finding that she failed to state a claim by not pleading whether she had an employment contract with Life Time. Life Time again moves to dismiss Roth's claims, arguing that she still fails to plead facts supporting an unjust enrichment claim and that her claim is barred because she has an adequate remedy at law. Life Time moves, in the alternative, to certify to the Minnesota Supreme Court the question of whether an adequate remedy at law bars an unjust enrichment claim under Minnesota law.

Because both parties agree that an adequate remedy at law would bar an unjust enrichment claim, the Court will deny Life Time's motion to certify the question to the Minnesota Supreme Court. However, because the Court finds Roth has sufficiently pleaded an unjust enrichment claim and it is unclear if Roth has an adequate remedy at law, the Court will deny Life Time's motion to dismiss.

## BACKGROUND

Roth worked as a group fitness instructor at a Life Time Fitness facility in Beachwood, Ohio. (Compl. ¶ 12, July 20, 2016, Docket No. 1.) Roth alleges that she and the other instructors "performed labor for Defendants in exchange for hourly wages." (*Id.* ¶ 13.) Roth alleges that her "job as group fitness instructor required her to perform work that preceded and followed each of her spinning classes." (*Id.* ¶ 14.) This included "unpaid and required pre- and post- class work," including preparing the room for class, cleaning the room after class, and participating in various Life Time events. (*Id.* ¶ 19.) Roth alleges that Life Time only paid group instructors for actual class time, and that

therefore, Lifetime "underpaid – indeed, refused to pay – [Roth] and class members for actual time worked." (*Id.* ¶ 20.)

The Group Fitness Instructor Manual (the "Manual") reflects this requirement. The Manual discusses pre-class activities:

> **Every Class, Every Time-** You are expected to be in the studio, ready to teach, 15 minutes before your class with music playing. A 15-minute transition time between classes exists for you to connect with the members and set the stage and environment for your class.

(*Id.*, Ex. A at 7.)[1] And the Manual discusses post-class activities:

> The studio is your home and every day is "Open House". You are responsible for leaving the studio in a condition of which you can be proud. All Life Time Fitness Team Members participate in the upkeep and presentation of our workplace; this includes the Group Fitness Team. Your department head will show you a cleaning checklist that may include re-stacking mats and weights, gathering towels, etc; this is your "contribution" for each class that you teach and is a requirement of your position.

(*Id.* at 9.)

In response to the Court's order dismissing her case, *see Roth v. Life Time Fitness, Inc.*, No. 15-3270, 2016 WL 3911875 (D. Minn. July 14, 2016), Roth now pleads that "[n]o contract exists (or ever existed) between [Roth] and any of the Defendants," (Compl. ¶ 18). Additionally, the Team Member Handbook states that it is "not intended as an employment contract and should not be used or interpreted as an employment contract or interpreted to create any legal rights." (*Id.*, Ex. B at 1.) The Team Member Handbook also provides that Roth and other team members are at-will employees. (*Id.*)

---

[1] All citations to the complaint's exhibits use internal pagination, rather than CM/ECF pagination.

In Count 1, Roth pleads the elements of an unjust enrichment claim under Minnesota law, including that Roth "conferred a benefit upon [Life Time] in the form of uncompensated labor," (*id.* ¶ 42); Life Time "appreciated, knew, and accepted this benefit" in a manner "that it is inequitable for them to retain it without paying class members the full amount of wages due and owing to them for that benefit of uncompensated labor." (*Id.* ¶¶ 43-44.) Finally, Roth alleges that "[n]o adequate legal remedy exists, whether under Minnesota contract law, other Minnesota common law, or Minnesota statutory law." (*Id.* ¶ 45.) The remainder of Roth's complaint provides similar allegations for each other state implicated by this action.

## ANALYSIS

### I. STANDARD OF REVIEW

In reviewing a motion to dismiss brought under Rule 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a claim for "relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although the Court accepts the complaint's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## II.     FAILURE TO PLEAD UNJUST ENRICHMENT

Life Time contends that Roth still fails to sufficiently plead facts to support an unjust enrichment claim.  "To establish an unjust enrichment claim, the claimant must show that the defendant has knowingly received or obtained something of value for which the defendant in equity and good conscience should pay." *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 838 (Minn. 2012) (quoting *ServiceMaster of St. `Cloud v. GAB Bus. Servs., Inc.*, 544 N.W.2d 302, 306 (Minn. 1996)).  Life Time argues that Roth failed to plead facts suggesting Life Time unjustly retained a benefit.

In *ServiceMaster*, the court found no enrichment because the party "paid dollar-for-dollar for what it got," and no injustice because there was no "cloud of impropriety." 544 N.W.2d at 306.  "[U]njust enrichment claims do not lie simply because one party benefits from the efforts or obligations of others, but instead it must be shown that a party was unjustly enriched in the sense that the term unjustly could mean illegally or unlawfully." *Id.* (brackets in original) (quoting *First Nat'l Bank v. Ramier*, 311 N.W.2d 502, 504 (Minn. 1981)).  In *Schlegelmilch v. Schlegelmilch*, the Minnesota Court of Appeals noted the "court has upheld awards for unjust enrichment in the absence of an express finding of fraudulent or illegal acts where there was moral wrongdoing similar in nature to fraud."  No. C1-00-951, 2001 WL 69998, at *7 (Minn. Ct. App. Jan. 23, 2001). Thus, to prevail on an unjust enrichment claim, the plaintiff must show that the defendant

was "unjustly" enriched, in a manner suggesting illegality, fraud, or "moral wrongdoing similar in nature to fraud." *Id.*

Life Time notes that Roth is not arguing that it would be illegal or unlawful for Life Time to pay her "by the class" rather than "hourly." *See* 29 C.F.R. § 778.111(a) (2010) (recognizing piece-rate pay). But Roth does not allege that she was paid on a "piece-rate" or "by the class" basis. She alleges only that she "performed labor for Defendants in exchange for **hourly wages**." (Compl. ¶ 13 (emphasis added).) She also states several times that her pre- and post-class work was "unpaid." (*Id.* ¶¶ 15, 16, 19, 20.) Life Time contends that these allegations of "hourly" wages and "unpaid" work are conclusory, and the Court need not accept them as true under *Twombly*. Life Time provides no case law support for that assertion, and on their face, the allegations appear to be factual rather than solely legal conclusions. Life Time may later argue that Roth was not in fact an hourly employee and that she earned piece-rate pay "by the class," which it could argue included pre- and post-class time. (*See* Defs.' Mem. in Supp. of Mot. to Dismiss at 6 n.3, Sept. 16, 2016, Docket No. 20 (mentioning piece-rate pay).) However, at this stage of proceedings, the Court must accept as true Roth's factual allegations, and she alleges she earned "hourly wages."

Overall, accepting Roth's allegations that she was paid hourly and that she was not compensated for performing some of her job duties, she has pleaded sufficient facts for an inference that she conferred the benefit of performing unpaid work duties and

structuring the employment relationship in this way could be considered unjust – meaning fraudulent, illegal, or a moral wrongdoing similar in nature to fraud.[2]

## III. ADEQUATE LEGAL REMEDY

Next, Life Time argues that Roth's unjust enrichment claim fails because she has an adequate legal remedy, which bars her claim.

The parties first dispute whether Roth had to affirmatively plead that she has no adequate remedy at law. Life Time cites *Kelley v. College of St. Benedict*, a District of Minnesota case in which the court stated that the plaintiff bore the burden of establishing that there was no adequate remedy at law. 901 F. Supp. 2d 1123, 1132 (D. Minn. 2012). However, the *Kelley* court relied on *Munshi v. J-I-T Servs., Inc.*, in which the plaintiff

---

[2] Life Time also cites a District of Minnesota case, *United States v. R.J. Zavoral & Sons, Inc.*, in which the court stated that to establish unjust retention of a benefit, a party must show either "(1) the plaintiff had a reasonable expectation of payment; (2) the defendant should reasonably have expected to pay; or (3) society's reasonable expectations of security of person and property would be defeated by nonpayment." No. 12-668, 2014 WL 5361991, at *16 (D. Minn. Oct. 21, 2014) (quoting *In re Pumehana Partners*, No. 03-02804, 2005 WL 1176611, at *2 (Bankr. D. Haw. Jan. 10, 2005)). Life Time argues that Roth did not satisfy any of these requirements. It is not clear that the test discussed in *R.J. Zavoral* is required under Minnesota law. But, even if one of those three showings discussed is required under Minnesota law, the Court finds Roth pleaded sufficient facts to survive a motion to dismiss under the standard: because Roth alleges she was paid "hourly," one could infer that she expected to be paid for all of her time or that Life Time should have expected to pay for that time.

Life Time also cites *Caldas v. Affordable Granite & Stone, Inc.*, to suggest that a party cannot continue accepting wages over a long period of time, and subsequently claim much more was owed to them via unjust enrichment. No. A10-2173, 2011 WL 1938307, at *4 (Minn. Ct. App. May 23, 2011). However, it appears that the court was applying laches doctrine, rather than stating an **element** of unjust enrichment that would be required at the pleading stage, and there is no indication that the Minnesota Supreme Court adopted this reasoning. *Id.*; *see Caldas*, 820 N.W.2d at 838-39 (rejecting an unjust enrichment claim because the plaintiffs were third-party beneficiaries to the contract they relied upon).

had already recovered a default judgment against the defendant and was arguing that the legal remedy was sufficiently ineffective, so as not to be considered "adequate." No. A06-346, 2007 WL 92852, at *2-3 (Minn. Ct. App. Jan. 16, 2007)). *Munshi* itself relied upon two cases denying **temporary injunctions** where the plaintiff did not meet the burden of establishing an injunction was appropriate because there was no adequate remedy at law. *Id.* at *3 (citing *Sunny Fresh Foods, Inc. v. MicroFresh Foods Corp.*, 424 N.W.2d 309, 310-11 (Minn. Ct. App. 1988); *Zimmerman v. Lasky*, 374 N.W.2d 212, 214-15 (Minn. Ct. App. 1985)). Thus, the Minnesota caselaw does not state that a plaintiff must establish the lack of an adequate remedy at law **at the pleadings stage**. And the Court finds that, at this stage of proceedings, dismissal would only be proper based on the existence of an adequate remedy at law if defendants show there is an adequate remedy at law based on the facts as pleaded in the complaint.[3]

Life Time next argues that the facts as pleaded by Roth establish that she has an adequate remedy at law under the Ohio Prompt Pay Act ("OPPA"), which requires a corporation doing business in Ohio to "pay all its employees the wages earned by them" by the first and fifteenth of each month. Ohio Rev. Code Ann. § 4113.15. Roth disputes that the OPPA provides her with an adequate remedy at law.

---

[3] The alternative – if the lack of adequate remedy of law were an element of an unjust enrichment claim that must be pleaded – would essentially require a plaintiff to plead facts showing that any other remedy is not "adequate" and may be an impossible burden to place on a plaintiff. Moreover, such a requirement would be inconsistent with the recognized practice of alternative pleading of unjust enrichment claims. *See, e.g., Superior Edge, Inc. v. Monsanto Co.*, 44 F. Supp. 3d 890, 899-900 (D. Minn. 2014); *C.H. Robinson Worldwide, Inc. v. U.S. Sand, LLC*, No. 13-1274, 2014 WL 67957, at *6 n.9 (D. Minn. Jan. 8, 2014).

Life Time cites a federal case, *Monahan v. Smyth Automotive, Inc.*, in which the court denied the employer's motion to dismiss an OPPA claim, finding that the OPPA "provide[d] employees with an avenue of relief if their employer fails to pay them promptly," even if their wages were disputed. No. 10-48, 2011 WL 379129, at *8-9 (S.D. Ohio Feb. 2, 2011). Life Time also cites a state court case, *Welch v. Prompt Recovery Services, Inc.*, in which the court affirmed a decision awarding an employee back wages, statutory damages, and attorney fees based in part on violation of the OPPA, arguing that her employer did not pay her for hours worked. No. 27175, 2015 WL 5578274, at *3-4 (Ohio Ct. App. Sept. 23, 2015). The appellate court found no error in the lower court's finding that the employer qualified as an "employer" under the act, or in the lower court's factual determination that the employer failed to pay the employee for hours worked. *Id.*

Roth disputes that the OPPA provides a standalone remedy for a claim such as hers. Roth cites several Ohio cases in which the court dismissed the plaintiffs' OPPA claim after finding the claim deficient under another statute – Ohio's minimum wage law and the Fair Labor Standards Act ("FLSA"). *See Craig v. Landry's, Inc.*, No. 16-277, 2016 WL 3406032, at *5 (S.D. Ohio, June 21, 2016) (minimum-wage claim); *Lutz v. Huntington Bancshares Inc.*, No. 12-01091, 2014 WL 2890170, at *20 (S.D. Ohio June 25, 2014) (FLSA claim). However, Life Time notes that in those cases the plaintiffs based their OPPA claims on the other substantive claim and did not assert a standalone OPPA claim. Similarly, in *Lacy v. Reddy Electric Co.*, the court denied a motion for summary judgment on the OPPA claim because "the viability of [his OPPA claim]

hinge[d] on the viability of the minimum wage and overtime claims." No. 11-52, 2013 WL 3580309, at *17 (S.D. Ohio July 11, 2013).

Several of these cases were considered in a District of Minnesota case, *Shoots v. iQor Holdings US Inc.*, No. 15-563, 2015 WL 6150862 (D. Minn. Oct. 19, 2015). In *Shoots*, the defendant argued that there was no independent cause of action under the OPPA. *Id.* at *8. The court disagreed, stating that *Lutz* and *Lacy* did not hold "that in all cases a[n OPPA] claim must necessarily depend upon a substantive right found elsewhere" and relying in part on *Monahan*. *Id.* at *9. However, the court stated "[t]o the extent that an independent right is required" it was present in the employment agreement. *Id.* The court also considered Eighth Circuit case law that has interpreted a similar Minnesota law as governing the timing of wages due; under this case law, an employee would have to rely on other provisions for its substantive right to recover back wages. *Id.* at *12 (citing *Karlen v. Jones Lang LaSalle Americas, Inc.*, 766 F.3d 863, 867 (8th Cir. 2014)).

After considering these arguments, the Court finds that it is not clear based on the pleadings that Roth has an adequate remedy at law that would bar her unjust enrichment claim. Although the federal district court in *Monahan* predicted that disputed wages were also covered by the OPPA, in light of the Eighth Circuit's interpretation of a similar Minnesota law and the cases Roth cites, the Court finds that it is not entirely clear that Roth would have an adequate remedy at law under the OPPA. Life Time does not assert the existence of any other adequate remedies at law. The Court will therefore deny Life Time's motion as to Roth's unjust enrichment claim.

## IV. CLASS ALLEGATIONS

Life Time argues that because Roth's individual claim cannot survive, the class allegations also fail under the same theories. Life Time argues that the complaint does not sufficiently allege unjust enrichment across the class. However, Roth makes the same allegations regarding that class that she makes for herself, including that they were paid "hourly wages," (Compl. ¶ 13), and performed "unpaid" job duties, (*id.* ¶¶ 14-16). Thus, the class claims survive for the same reasons that Roth's claim survives. Life Time also challenges the class claims by arguing that Roth has failed to carry her burden of showing there is no adequate remedy at law in those states. However, as discussed above, the Court finds that a plaintiff is not required to affirmatively plead facts showing there is no adequate remedy at law. Thus, the Court rejects Life Time's motion with regard to Roth's class claims.

## V. MOTION TO CERTIFY QUESTION

Life Time moves in the alternative for the Court to certify the following question to the Minnesota Supreme Court: "Where an adequate remedy at law is or was available to a party, does the existence of that remedy at law preclude a claim for unjust enrichment?" (Defs.' Mem. in Supp. of Mot. to Certify at 1, Sept. 16, 2016, Docket No. 26.) A federal court's "most important consideration" in deciding whether to certify a question to a state court is whether it "finds itself genuinely uncertain about a question of state law." *Johnson v. John Deere Co.*, 935 F.2d 151, 153 (8th Cir. 1991) (quoting *Tidler v. Eli Lilly & Co.*, 851 F.2d 418, 426 (D.C. Cir. 1988)). Absent a "'close' question

of state law or the lack of state sources, a federal court should determine all the issues before it." *Johnson*, 935 F.2d at 154 (citing *Perkins v. Clark Equip. Co.*, 823 F.2d 207, 209 (8th Cir. 1987)). Here, both parties agree on the answer to the proposed question, and thus, the Court finds no close question of state law warranting certification to the Minnesota Supreme Court. The Court therefore will deny Life Time's alternative motion to certify a question to the Minnesota Supreme Court.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that

1. Life Time's Motion to Dismiss [Docket No. 17] is **DENIED**.

2. Life Time's Motion to Certify Question of Law to the Minnesota Supreme Court [Docket No. 22] is **DENIED**.

DATED: May 1, 2017　　　　　　　　　　　\_\_\_\_s/ John R. Tunheim\_\_\_\_
at Minneapolis, Minnesota.　　　　　　　　　JOHN R. TUNHEIM
　　　　　　　　　　　　　　　　　　　　　Chief Judge
　　　　　　　　　　　　　　　　　　　　　United States District Court